UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────

LESLIE MOORE MIRA,

                Plaintiff,

      -v-

ARGUS MEDIA, *et al.*,

                Defendants.

              No. 15-cv-9990 (RJS)
              <u>OPINION AND ORDER</u>

<u>RICHARD J. SULLIVAN</u>, District Judge:

      Plaintiff Leslie Moore Mira ("Mira") brings this action against Argus Media ("Argus" or "Argus Media") and Argus employees John Demopoulos ("Demopoulos"), Ian Michael Stewart ("Stewart"), and Miles Weigel ("Weigel"), alleging employment discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), the New York State Human Rights Law (N.Y. Exec. L. § 290 *et seq.*) ("NYSHRL"), and the New York City Human Rights Law (N.Y.C. Admin. Code § 8–101 *et seq.*) ("NYCHRL").  Now before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants' motion is granted.

## I. BACKGROUND

### A. Facts[1]

      Plaintiff Leslie Moore Mira, a naturalized U.S. citizen of Mexican descent, began working as a reporter at Argus Media in January of 2013.  (Compl. ¶ 1.)  She had recently resigned from a

---

[1] The following facts are taken from the Complaint, filed on December 22, 2015.  (Doc. No. 2 ("Complaint" or "Compl.").)  In ruling on Defendants' motion, the Court has also considered Defendants' memorandum of law (Doc. No. 50 ("Mem.")), Plaintiff's opposition (Doc. No. 58 ("Opp'n")), and Defendants' reply (Doc. No. 59 ("Reply")).

similar position at Platts/McGraw Hill ("Platts") after allegedly experiencing and complaining about sexual harassment there.  (*Id.*)  Mira's new coworkers were friendly at first, but after a month or two, they became more "reserved." (*Id.* ¶ 3.)  According to the Complaint, Mira's colleagues at Argus gradually marginalized her "[b]ecause [she had] expressed harassment-related concerns [while working] at Platts."  (*Id.*)  Although the Complaint does not precisely establish the connection between Mira's alleged marginalization at Argus and her experience at Platts, it appears to suggest that Platts first retaliated against Mira by maligning, stalking, and surveilling her, and then, after Mira left Platts and began working at Argus, Platts somehow induced employees at Argus to treat Mira likewise.  (*See id.* ¶ 1 (alleging retaliation by Platts); *id.* ¶ 2 (describing Platts and Argus as "competitors but also business collaborators" that "periodically meet"); *id.* ¶ 3 ("Because of having expressed harassment-related concerns at Platts and [the] ensuing and widespread campaign of retaliation at Platts, plaintiff soon became marginalized at Argus.").)  The Complaint does not allege any facts that clearly explain how Mira arrived at the conclusion that her Argus colleagues were acting at the behest of her former employer.

Between the spring and fall of 2013, Mira experienced what she alleges were numerous instances of surveillance, stalking, or intimidation.  On two occasions in the spring and summer of 2013, Mira observed what she believed to be "photographic activity" aimed at her bedroom windows from outside by an unrecognized person.  (*Id.* ¶ 4.)  On the morning after one of these occasions, Mira overheard Stewart, an Argus coworker and a Defendant in this case, say "she's here" on the phone as she entered the office.  (*Id.*; *see also id.* at 4.)  The Complaint implies that Mira saw some connection between the "photographic activity" and Stewart's remark, although it does not specify the nature of the connection or explain how Mira drew it.  On another occasion, the morning after Mira and a friend danced and "engaged in some intimate activity" at her

apartment, Stewart "greeted [Mira] . . . in a highly personal, sexualized voice tone," and Demopoulos, a senior markets manager at Argus and another Defendant in this case, later joked about going to a disco. (*Id.* ¶ 7; *see also id.* at 4.)  Again, the Complaint suggests that Stewart's and Demopoulos's comments were intended to be veiled references to Mira's private affairs.  Most of the remaining allegations in the Complaint follow a similar pattern:  Mira observed something or overheard some remark at work that she took to be related to her private life, which in turn apparently led her to conclude that her coworkers were stalking her and subjecting her to surveillance.  (*See, e.g.*, *id.* ¶ 9 ("Plaintiff believes third parties dispatched by defendants stalked plaintiff and that conversations were recorded.").)  In August of 2013, for example, Mira saw what she believed was white splatter from a paintball gun in the office elevator shaft, which she took to be an allusion to a comment she had made to her home contractor the day before about her nerves being "shot" from stress.  (*Id.* ¶ 8.)  In September, Stewart and Demopoulos joked about "hunting for badgers," which Mira took to be a reference to a phone conversation she had had with a friend about an upcoming vacation to Madison, Wisconsin, where the University of Wisconsin Badgers happen to play.  (*Id.* ¶ 9.)  Mira later saw a cockroach in her apartment "[w]ithin days" of a phone conversation with a friend about a cockroach on the sidewalk.  (*Id.* ¶ 14.)  And in November, Argus participated in a fundraiser for the Committee to Protect Journalists, which Mira took to be an allusion to another phone conversation with a friend about protecting journalists.  (*Id.* ¶ 15.)

The Complaint also makes a few more pointed allegations about surveillance.  Most significantly, it asserts that "Argus officers from London and Houston lawyers and Platts management" all met together at an unspecified place in New York in May of 2013; after the meeting, Argus officers "looked in [Mira's] direction" as they entered the office, and Argus general counsel Lucy Sladojevic joked about "going into surveillance because it was a flourishing

business" and made a self-deprecating remark about drawing the curtains in Sladojevic's hotel room "as a 'kindness' so as not to expose New Yorkers to her body." (*Id.* ¶ 5.) Around the same time, Weigel, a senior vice president at Argus and a Defendant in this action, told Mira that he would "investigate" her, then later denied having made the statement. (*Id.* ¶ 6; *see also id.* at 4.) In September of 2013, Demopoulos "sought to justify in [an] audible closed door meeting to a resigning reporter why [Mira] was under surveillance." (*Id.* ¶ 11.) The Complaint further alleges that an unknown man near Mira's apartment once told her to "be careful" because unidentified people were "building a case" against her. (*Id.* ¶ 12.) Finally, in March of 2014, an Argus coworker "quickly minimized her computer screen," which had an image that "bore [an] identical resemblance to [Mira's] bedroom." (*Id.* ¶ 17.)

The Complaint makes one allegation that touches on discrimination on the basis of national origin. Specifically, in the fall of 2013, "[i]n what had by then . . . become a deeply hostile environment" for Mira, Demopoulos "commented on [the] success that an ancestor of [another employee's] had had in driving Mexicans out of Texas." (*Id.* ¶ 13.) The Complaint does not give any context for the comment or indicate whether Demopoulos directed it at Mira.

Finally, the Complaint makes the following allegations about Mira's performance reviews and about the circumstances surrounding her termination. In September of 2013, Mira received a negative performance review from two Argus supervisors. (*Id.* ¶ 10.) The review "contained one error of fact," and "some [of its] criticism seemed out of context or exaggerated," but "[o]ther criticism was valid and on-point." (*Id.*) Two months later, one of the same supervisors told Mira that "her work had improved significantly and was no longer cause for concern." (*Id.* ¶ 15.) In January of 2014, however, Mira received another negative performance review, and was told that the prior positive statements resulted from a misunderstanding between the two supervisors. (*Id.*

¶ 16.)  Four months later, in May of 2014, Mira emailed Demopoulos and the two supervisors to "ask[] in [an] open-ended, non-accusatory manner whether they were aware of any stalking and surveillance activity against [her]."  (*Id.* ¶ 18.)  Although the Complaint does not indicate whether the email specifically mentioned Weigel's alleged comment about "investigating" Mira, it asserts that a human resources manager responded to Mira's email and said she would "probe" the meaning of that comment.  (*Id.*)  About a week after sending the email, Mira was terminated.  (*Id.* ¶ 19.)

## B.  Procedural History

On December 22, 2015, Mira, a U.S. citizen and resident of New York who is proceeding *pro se*, filed the Complaint in this action against Argus Media and Argus employees Demopoulos, Stewart, and Weigel, asserting violations of Title VII, the NYSHRL, and the NYCHRL.[2]  (Doc. No. 2.)  After granting a number of adjournments to allow Mira to effect service on all Defendants, the Court held a conference on June 30, 2016 to discuss Defendants' contemplated motion to dismiss and Mira's request for leave to file an amended complaint.  (*See* Doc. No. 36.)  Although the Court gave Mira until August 11, 2016 to file an amended complaint (*see* Doc. Nos. 36, 39) she never did so; instead, she submitted several letters requesting that this case be stayed pending resolution of her request that Judge McMahon take this case as related to a separate suit that Mira had filed against her earlier employer, Platts.  (*See* Doc. Nos. 42, 45, 52, 55.)  The Court denied those requests, finding a stay unnecessary.[3]  (*See* Doc. Nos. 44, 54, 57.)  Defendants filed their

---

[2] The Equal Employment Opportunity Commission mailed Mira a right-to-sue letter on September 22, 2015.  (*See* Doc. No. 2 at 10.)  Given the "presumption that a mailed document is received three days after its mailing," *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011), Mira's suit was filed within the 90-day limitations period, albeit barely.

[3] On October 3, 2016, Judge McMahon denied Mira's request to accept this case as related to the suit against Platts. (*Mira v. Kingston et al.*, 15-cv-9989, Doc. No. 42.)

motion to dismiss on August 29, 2016 (Doc. No. 46), and the motion was fully briefed on October 11, 2016 (Doc. No. 59).

Before turning to the analysis, the Court must address two issues engendered by Mira's submissions. First, Mira's opposition brief includes a host of new facts that were not alleged in her Complaint, as well as at least one new legal theory. (*See* Opp'n 2 ("Plaintiff respectfully submits this opposition brief with additional supporting facts . . . ."); *id.* at 1–2 (seeming to add a new conspiracy-related claim under 42 U.S.C. § 1985, and perhaps a claim under 42 U.S.C. § 1981).) The Court will not consider these new facts and claims in deciding Defendants' motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000); *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *McIntosh v. United States*, No. 14-cv-7889 (KMK), 2016 WL 1274585, at *17 (S.D.N.Y. Mar. 31, 2016).[4] Second, after Defendants' motion was fully briefed, Mira made two further submissions. On October 31, 2016, Mira once again requested leave to amend her Complaint in this case to include new allegations about a conspiracy between Platts and Argus, as well as new allegations contained in an email and an affidavit. (Doc. No. 64.) The Court denied the request without prejudice to renewal following resolution of Defendants' motion to dismiss. (Doc. No. 65.) On December 29, 2016, Mira nonetheless filed the email and affidavit that she had referenced in her request. (Doc. No. 66.) The Court will likewise not consider these documents in deciding Defendants' motion. *See Payne v. Malemathew*, No. 09-cv-1634 (CS), 2011 WL 3043920, at *2 n.3 (S.D.N.Y. July 22, 2011)

---

[4] Although district courts sometimes consider new factual allegations made in a *pro se* plaintiff's opposition briefs where they are consistent with those in the complaint, *see Braxton v. Nichols*, No. 08-cv-8568, 2010 WL 1010001, at *1 (S.D.N.Y. March 18, 2010), they do not consider entirely new claims, *see Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 n.1 (S.D.N.Y. 2007), *aff'd*, 340 F. App'x 723 (2d Cir. 2009); *Weerahandi v. Am. Statistical Ass'n*, No. 14-cv-7688 (AT), 2015 WL 5821634, at *8 (S.D.N.Y. Sept. 30, 2015), nor do they allow a plaintiff to use an opposition brief to effectively amend her complaint, *see Pandozy*, 518 F. Supp. 2d at 554 n.1 (collecting cases). Because Mira's new allegations go well beyond merely elaborating on the facts alleged in the Complaint and apparently are intended to support new legal theories, the Court declines to consider them here.

("[N]either a memorandum of law [containing new facts] nor an affidavit are properly considered in connection with a motion to dismiss.") (citing *Friedl*, 210 F.3d at 83–84).

## II.  LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

Where a plaintiff proceeds *pro se*, a court must liberally construe the complaint and interpret it to raise the strongest arguments that it suggests. *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). "The policy of liberally construing *pro se* submissions" arises out of the understanding that "[i]mplicit in the right to self-representation is an obligation on the part of the

court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* "[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

### III.  DISCUSSION

#### A.  Title VII Claims

Construed liberally, the Complaint makes three distinct claims under Title VII:  (1) a claim for employment discrimination on the basis of national origin and sex; (2) a hostile work environment claim; and (3) a claim for employer retaliation.  The Court will address each claim in turn.  Preliminarily, however, the Court notes that, in the Second Circuit, there is no individual liability under Title VII.  *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (an individual defendant "may not be held personally liable under Title VII"), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998).  Thus, to the extent that the Complaint asserts Title VII claims against the individual Defendants in this case – Weigel, Demopoulos, and Stewart – those claims are dismissed, and the Court will consider Mira's Title VII claims only as they are asserted against Argus Media.

#### 1.  National-Origin and Sex Discrimination

Title VII prohibits employers from "discharg[ing] any individual[] or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  To survive a motion to dismiss, a complaint alleging

employment discrimination under Title VII must plead facts that plausibly support the following elements:  (1) the plaintiff is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) there is "at least minimal support for the proposition that [her] employer was motivated by discriminatory intent."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  With respect to the fourth element in particular, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation."  *Id.* Nevertheless, "[a] claim for discrimination under Title VII is properly dismissed where the plaintiff fails 'to plead any facts that would create an inference that any adverse action taken by any defendant was based upon [a protected characteristic of the plaintiff].'"  *Williams v. Time Warner Inc.*, 09-cv-2962 (RJS), 2010 WL 846970, at *3 (S.D.N.Y. Mar. 3, 2010) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam)); *see also EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) ("[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.") (internal citations omitted).

Mira's allegations undoubtedly support at least two elements of a Title VII discrimination claim; the Complaint alleges that Mira is a woman and of Mexican descent, and that she was terminated in May of 2014.[5]  (*See* Compl. at 4.)  Although the parties do not address whether the

---

[5] To the extent that the Complaint can be construed to allege that Mira suffered other adverse employment actions in addition to termination – for example, Defendants suggest that the Complaint could be understood to allege that Mira's two negative performance reviews and/or various workplace comments and incidents related to surveillance amounted to adverse employment actions (Mem. 8–9) – the Court finds that these allegations, even if true, do not qualify as adverse employment actions for purposes of a Title VII discrimination claim.  Without more – such as allegations of a detrimental effect on salary, benefits, or title – a negative performance evaluation alone does not constitute an adverse employment action, *Chung v. City Univ. of New York*, 605 F. App'x 20, 22 (2d Cir. 2015), and the Complaint here

Complaint sufficiently alleges that Mira was qualified for the position she held at Argus, the fact that Mira worked at Argus for nearly a year and a half suggests that this element was likewise adequately pleaded.  The parties dispute, however, whether the allegations in the Complaint "give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311.  The Court finds that they do not.

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'"  *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  Mira's Complaint, however, simply does not allege facts that even intimate that she was terminated either because she is a woman or because she is Mexican-American.  There is no allegation that anyone at Argus criticized Mira's performance in ethnically degrading or sexist terms; no suggestion that male or non-Mexican-American employees were more favorably treated; no allegations that the sequence of events leading to Mira's termination smacked of sexism or national-origin discrimination.  Indeed, the natural inference to be drawn from the facts alleged in the Complaint is that Mira was terminated at least in part because she was underperforming:  Mira asserts that she received two negative performance reviews during her time at Argus, and admits that at least one of them included criticism that was "valid and on-point." (Compl. ¶¶ 10, 16.)  The closest the Complaint comes to alleging anything like a discriminatorily motivated incident is when it asserts that Mira once overheard Demopoulos "comment[] on [the]

does not allege that any tangible consequence, such as a salary reduction, followed from Mira's negative performance evaluations.  The comments and incidents related to surveillance similarly do not qualify as adverse employment actions.  *See id.* (defining adverse employment action to mean "materially adverse change in the terms and conditions of employment," such as termination, demotion, or significantly diminished responsibilities).

success that [another employee's] ancestor . . . had had in driving Mexicans out of Texas." (*Id.* ¶ 13.)  But the Complaint nowhere links this oblique and isolated remark, which evidently was uttered around September of 2013, to Mira's eventual termination in May of 2014.

"It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs *because of* an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added).  Although at this stage Mira need only plead facts that support a "minimal inference" of a causal link between discriminatory motivation and her termination, her Complaint fails to meet even that low standard.  Because the Complaint alleges no facts that allow the Court to infer that Mira was terminated because of her sex or national origin, her claim for discrimination under Title VII must be dismissed.

### 2.  Hostile Work Environment

Mira next claims that Argus created a hostile work environment based on national-origin and sex discrimination.  "To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct:  (1) is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of [any characteristic protected by Title VII]." *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 209 (2d Cir. 2010) (quoting *Patane*, 508 F.3d at 113; *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)).  "For liability to attach, the employer must also be responsible for the conduct at issue." *Id.*

The Complaint clearly alleges that Mira subjectively perceived her environment at Argus to be "deeply hostile" (Compl. ¶ 13), but the parties dispute whether the Complaint sufficiently alleges facts that tend to show that Mira was subjected to an *objectively* hostile work environment

*because of* her status as a Mexican-American or a woman.  Once again, the Court finds that the Complaint falls short.

With respect to the objectivity requirement, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In general, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.*; *see also Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness.").  "There is no 'mathematically precise test' . . . for deciding whether an incident or series of incidents is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment.  Instead, courts must assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris*, 510 U.S. at 22–23).  In addition to the objectivity requirement, of course, a plaintiff claiming a hostile work environment must allege facts that tend to show that she was subjected to such an environment *because of* her protected characteristic. *Alfano*, 294 F.3d at 374; *see also id.* at 377 ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.").

Mira's hostile work environment claim in this case appears to rest on the following allegations:  her coworkers gradually became more guarded and reserved around her; various employees made remarks over the course of Mira's year and a half at Argus that she took to be allusions to her personal life and private conversations; Stewart in particular once greeted her in the office in a "highly personal, sexualized voice tone"; and Demopoulos once commented within Mira's earshot about the role another employee's ancestors had "in driving Mexicans out of Texas."  (*See* Compl. ¶¶ 3, 5, 7, 13.)  Most of these allegations "lack a linkage or correlation" to Mira's status as either a Mexican-American or a woman; the Complaint never alleges facts suggesting that Mira's colleagues distanced themselves from her, or interested themselves in her private affairs, *because of* her Mexican ancestry or her sex.  Only Demopoulos's comment about driving Mexicans out of Texas, and possibly Stewart's sexualized greeting, even touch on a characteristic protected by Title VII.

But even if the Complaint sufficiently alleged a link between the complained-of conduct and a protected characteristic, these allegations could not support a finding that Argus cultivated an environment so "abusive" and "permeated with discriminatory intimidation, ridicule, and insult" that it altered the conditions of Mira's employment.  *Littlejohn*, 795 F.3d at 320–21.  The incidents alleged in the Complaint were isolated or episodic and occurred over a span of nearly eighteen months; they were perhaps vaguely offensive, but certainly not physically threatening; and nothing in the Complaint suggests that the resulting environment unreasonably interfered with Mira's job performance.  Put simply, a work atmosphere characterized by general guardedness and the occasional odd or even offensive comment – as unpleasant as such an atmosphere may be – is not the kind of acutely hostile environment that Title VII redresses.  Having considered the totality of the circumstances alleged, the Court finds that the Complaint fails to plead facts sufficient to

state a claim for a hostile work environment under Title VII.  *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 Fed. App'x 115, 119 (2d Cir. 2010) (no hostile work environment even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Davis-Molinia v. Port Auth. of New York & New Jersey*, No. 08-cv-7586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (no hostile work environment where plaintiff was excluded from staff meetings, deliberately avoided, yelled at, and talked down to, among other things), *aff'd*, 488 Fed. App'x 530 (2d Cir. 2012); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment.").  Accordingly, Mira's hostile work environment claim is also dismissed.

### 3.  Retaliation

Finally, Mira claims that Argus transgressed Title VII's anti-retaliation provision, which prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e–3.  "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that:  (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action."  *Patane*, 508 F.3d at 115; *see also Littlejohn*, 795 F.3d at 316.  As with a discrimination claim, "[t]he allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of [employment discrimination] litigation."  *Id.*  Moreover, in the absence of a direct link between protected activity and retaliatory action, a plaintiff may demonstrate the necessary causal connection "indirectly, by

showing that the protected activity was followed closely by discriminatory treatment [in the form of an adverse employment action]."  *Id.* at 319 (citation omitted).

Mira's allegations respecting retaliation are strewn randomly throughout the Complaint, but she appears to make two distinct, if related, claims for retaliation:  first, that Argus subjected Mira to stalking and surveillance in retaliation for her complaint to her previous employer, Platts, about sexual harassment at Platts; and second, that Argus fired Mira in retaliation for her email inquiry about additional alleged stalking and surveillance while she was at Argus.  (*See* Compl. ¶¶ 1–3, 18–19; *see also* Opp'n 1, 5–7, 10–11.)  The Court will consider each claim in turn.

a.  Retaliation for Complaining to Platts About Sexual Harassment

With respect to Mira's first retaliation claim – that Argus subjected her to retaliatory stalking and surveillance because she complained to her previous employer, Platts, about sexual harassment at Platts some time before being employed at Argus – the Complaint fails to plead facts sufficient to show any of the three required elements.  First, Mira never indicates if, when, or how Argus knew about her prior protected activity at Platts.  The Complaint merely alleges that Argus and Platts are "competitors" but nonetheless "business collaborators" that "periodically meet." (Compl. ¶ 2.)   It also mentions that "Argus officers" and "Platts management" met at an unidentified location "around May 2013," apparently after the alleged stalking and surveillance by Argus employees had already begun.  (*Id.* ¶ 5.)  Even construed liberally, these skeletal allegations simply do not suggest that Argus knew anything about Mira's earlier protected activity at Platts. *See Payne*, 2011 WL 3043920, at *4 (dismissing retaliation claim where, among other things, plaintiff alleged no facts indicating that employer knew of employee's engagement in protected activity); *Perry v. State of New York Dep't of Labor*, No. 08-cv-4610 (PKC), 2009 WL 2575713, at *6 (S.D.N.Y. Aug. 20, 2009), *aff'd*, 398 F. App'x 628 (2d Cir. 2010) (same).

15

Second, the Complaint does not allege facts sufficient to support a finding that Argus took an employment action that disadvantaged Mira.  For purposes of a Title VII retaliation claim, an adverse employment action may take the form of a materially adverse change in employment status or in the terms and conditions of employment, but it may also more generally be any action that might dissuade a reasonable worker from making or supporting a charge of discrimination.  *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Although it is not difficult to imagine that retaliatory stalking and surveillance might intimidate a reasonable employee and dissuade her from complaining about discrimination, Mira's Complaint does not plausibly allege that Argus – or anyone else, for that matter – actually subjected her to stalking and surveillance.  Several of the Complaint's allegations report the actions of unidentified or unknown persons, not Argus employees.  (*See* Compl. ¶ 4 (unknown person purportedly photographing Mira in her apartment); *id.* ¶ 12 (unidentified man warning Mira to "be careful"); *id.* ¶¶ 8, 14 (implying that unknown person(s) planted cockroach in Mira's apartment and splattered white paint in office elevator shaft).)  Others draw unsupported connections between Mira's personal phone conversations and commonplace remarks by Argus colleagues.  (*See, e.g.*, *id.* ¶ 9 (assuming remark about "hunting for badgers" must be veiled reference to Mira's planned visit to Wisconsin); *id.* ¶ 7 (assuming joke about "disco" must be allusion to Mira's dancing in her apartment).)  Still others invest odd or joking comments by coworkers with undue significance.  (*See, e.g.*, *id.* ¶ 6 (recounting Weigel's comment that he would "investigate" Mira); *id.* ¶ 5 (recounting Lucy Sladojevic's joke about "going into surveillance because it was a flourishing business").)

Only one allegation – that Demopoulos "sought to justify in [an] audible closed door meeting to a resigning reporter why [Mira] was under surveillance" – even arguably states a fact

that might substantiate Mira's theory.   But a single overheard conversation that adverts to "surveillance," unaccompanied by any concrete facts, cannot bear the weight of Mira's hypothesis that Argus engaged in a concerted effort to stalk, surveil, and "widely vilify" her.  (Compl. at 7.) "Factual allegations must be enough to raise a right to relief above the speculative level" – they must "nudge[]" a claim "across the line from conceivable to plausible" – and "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 679.  Although the Court must accept Mira's factual allegations as true and draw all *reasonable* inferences in her favor, it is not required to draw dubious inferences that are not supported by the facts.  Here, the Court declines to draw Mira's far-fetched inference that the alleged events ensued from a massive stalking and surveillance project by Argus.  *See McIntosh*, 2016 WL 1274585, at *15 ("[J]ust because a litigant posits the existence of a conspiracy does not make it plausible."); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.")

Third, and relatedly, the Complaint does not allege any facts that might imply a causal connection between Mira's protected activity (complaining to Platts management about sexual harassment at Platts) and the alleged adverse employment action (stalking and surveillance by Argus).  It simply asserts, in entirely conclusory fashion, that Argus subjected Mira to stalking and surveillance "[b]ecause [she] expressed harassment-related concerns at Platts."  (Compl. ¶ 3.) Once again, the Court finds the inference that Mira wishes to draw utterly implausible and somewhat baffling:  it is difficult to imagine why one employer would hire and then retaliate against a new employee for having complained about sexual harassment to a *different* employer.

Furthermore, the several-month interlude between the protected activity (sometime before January 2013, *see id.* ¶ 1) and the earliest alleged instance of surveillance (spring of 2013, *see id.* ¶ 4) "is too long for a causal inference to be appropriate." *Cunningham v. Consol. Edison Inc.*, No. 03-cv-3522 (CPS), 2006 WL 842914, at *20 (E.D.N.Y. Mar. 28, 2006); *see Murray v. Visiting Nurse Servs. of New York*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.") (collecting cases). In sum, the Complaint fails to allege facts sufficient to support Mira's first retaliation claim.

    b.   Retaliation for Inquiring About Stalking and Surveillance at Argus

Mira's second retaliation claim – that Argus fired her for complaining about "stalking and surveillance activity" – fares no better than her first. Specifically, the Complaint fails to allege that Mira engaged in a protected activity within the meaning of Title VII. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85; *see also* 42 U.S.C. § 2000e–3 (prohibiting retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter"). "The employee does not have to demonstrate that the conduct complained about actually violates Title VII, but he must demonstrate a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Moran v. Fashion Inst. of Technology*, No. 00-cv-1275 (KMW) (RLE), 2002 WL 31288272, at *8 (S.D.N.Y. Oct. 7, 2002) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). Protected activity may consist of "the filing of formal charges of discrimination" as well as "informal protests

of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

Here, the Complaint alleges that Mira emailed Demopoulos and at least two other Argus employees and merely "asked in [an] open-ended, non-accusatory manner whether they were aware of any stalking and surveillance activity against [her]." (Compl. ¶ 18.) An "open-ended, non-accusatory" inquiry email hardly seems to constitute "action taken to protest" discrimination prohibited by Title VII. Even assuming that Mira's email qualifies as an informal protest, however – which is doubtful – the Complaint nowhere alleges facts sufficient to demonstrate that Mira had a good-faith, reasonable belief that the "stalking and surveillance activity against [her]" violated Title VII. Indeed, as just discussed, Mira's factual allegations permit neither the inference that Argus instigated such activity nor the inference that it constituted retaliation for Mira's earlier harassment complaint to Platts. In short, the Complaint also fails to allege facts sufficient to support Mira's second retaliation claim. The Court accordingly grants Defendants' motion to dismiss as to both of Mira's Title VII retaliation claims.

## B.  State and City Law Claims

Having dismissed Mira's federal claims, the Court next considers whether to exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims. *See* 28 U.S.C. § 1367(c)(3) ("[A] district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). As the Second Circuit has instructed, in most cases where all federal claims have been dismissed before trial, "the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial

19

economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."). For this reason, courts in this circuit "regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed." *Morant v. Physicians Affiliate Grp. of New York, P.C.*, No. 14-cv-0067, 2014 WL 3964153, at *2 (S.D.N.Y. Aug. 13, 2014) (quoting *Harris v. NYU Langone Medical Ctr.*, No. 12-cv-0454 (RA), 2014 WL 941821, at *2 (S.D.N.Y. March 11, 2014)). Therefore, the Court declines to exercise supplemental jurisdiction and dismisses Mira's NYSHRL and NYCHRL claims without prejudice, *see Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) ("[W]hen a court dismisses for lack of subject-matter jurisdiction, that dismissal must be without prejudice."), though the Court is skeptical that the Complaint pleads facts sufficient to support claims even under the more generous NYCHRL standard, *see, e.g.*, *Williams v. Metro-N. Commuter R. Co.*, No. 11-cv-7835 (CM), 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012) ("The broader remediation available under the City law does not allow [a plaintiff] to dispense with linking [her] claim of hostility to some attitude that the law forbids.").

### C.  Leave to Amend

As noted earlier, Mira was given a generous amount of time – from June 30 until August 11, 2016 – to file an amended complaint. (*See* Doc. Nos. 36, 39.) She never did so. Mira's rambling opposition brief, however, includes a cursory request for leave to amend, although it does not attach a proposed amended complaint or explain how she plans to cure the defects of the original Complaint. (Opp'n 2.) Mira also submitted a letter on October 31, 2016 reiterating her

request for leave to amend.  (Doc. No. 64.)  The Court denied that request without prejudice to renewal after the resolution of Defendants' motion to dismiss.  (Doc. No. 65.)  Accordingly, should Mira wish to renew her request for leave to amend, she may send a letter to the Court, no later than April 19, 2017, that complies with Rule 2.A of the Court's Individual Rules and Practices (*see* http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=1233) and attaches a proposed amended complaint.  The letter and proposed amended complaint should not be accompanied by any affidavits, emails, or other attachments, which will not be considered.

However, it bears noting that the additional factual allegations scattered throughout Mira's opposition brief largely mirror her earlier assertions and appear unlikely to cure the deficiencies identified in this opinion.  Therefore, Mira is reminded that entirely conclusory claims about "sexual and gender animus" and the assertion of vague and unsupported connections between prosaic workplace comments and Mira's private life would be insufficient to support an inference that Mira suffered an adverse employment action because of her sex or national origin.  (*See, e.g.*, Opp'n 8 (assuming comment about quality of Christmas office party photos must be allusion to surveillance photos allegedly taken of Mira); *id.* at 7–8 (reporting a single racially insensitive joke allegedly made by Stewart out of Mira's hearing); *id.* at 7 (stating, conclusorily, that coworkers' "frequent reference to [Mira's] personal life" is "demonstrative of . . . sexual and gender animus" and "represented a gross denial of basic civil rights enjoyed by white coworkers").)

In the event that Mira submits a letter and proposed amended complaint renewing her request for leave to amend, Defendants shall submit a response letter by April 24, 2017 in accordance with Rule 2.A of the Court's Individual Rules and Practices.  If Mira does not submit a letter and amended complaint by April 19, 2017, the Court will close this case.

IV.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion pending at docket number 46.

SO ORDERED.

Dated:      March 29, 2017
              New York, New York

RICHARD J. SULLIVAN
United States District Judge

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/17

22